<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____ :

BRYAN MILLER,                    :          Hon. Joseph H. Rodriguez

      Petitioner,               :          Civil Action No. 02-5393

                      :

      v.                        :               **OPINION**

                      :

LYDELL SHERRER, *et al.*,         :

      Respondents.              :

_____ :

**RODRIGUEZ**, SENIOR DISTRICT JUDGE:

Bryan Miller ("Miller"), who is confined at the Northern State Prison in Newark, New Jersey, filed a <u>pro se</u> Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254(a), raising several grounds for relief.  The State filed an Answer opposing the Petition, accompanied by relevant portions of the state court proceedings.  For the reasons discussed herein, the Court will deny habeas relief, dismiss the Petition, and decline to issue a certificate of appealability.  <u>See</u> 28 U.S.C. §§ 2254 (a) and (d); 2253 (c)(2).

## I.  BACKGROUND

On April 19, 2000, Miller was convicted of first-degree robbery in violation of N.J.S.A. 2C:15-1 (count one), and second-degree aggravated assault in violation of N.J.S.A. 2C:12-1b(1) (count two).  (<u>See</u> RE4.)  The jury acquitted Miller on two other related charges of third-degree terroristic threats, N.J.S.A. 2C:12-3a (count three), and fourth-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a (count

four).  (See RE4.)

The Honorable Samuel Natal, J.S.C. ("Judge Natal") gave a standard jury instruction on the crimes charged.  (See RE15 at 168-14 to 168-23.)  He did not receive objections to the instructions.  (See id. at 173-7 to 176-10.)  During deliberation, the jury asked the following question about the difference between serious and significant bodily injury:

> THE COURT: Counsel, I've received the following question from the jury, it says: "The difference between serious bodily injury and significant." Counsel, what I propose to do is I'm just going to read definitions from 2C:11-1.  I would start with bodily injury, then I would read serious bodily injury, and then significant bodily injury.
> * * *
> Any objection to the Court answering that way?
> Mr. Nieves (Defendant): No, Your Honor.
> Ms. Ruggero (State): No, Your Honor.

(Id. at 166-22 to 167-14.)  After the jury listened to Judge Natal's instruction, it returned a verdict of first-degree robbery, which involved an attempt to inflict serious bodily injury in the course of committing the crime, and found Miller not guilty of second-degree aggravated assault, which involved an attempt to cause serious bodily injury.  (See id. at 169-20 to 172-25.)  The jury, however, found Miller guilty of third-degree aggravated assault, which involved an attempt to cause significant bodily injury.  (Id.)

The judge interrupted the verdict and conferred with counsel about the inconsistent verdict of first-degree robbery and third-degree aggravated assault.  (See id. at 173-6 to 174-11.)  He obtained agreement from Miller's attorney in order to request the jury to

-2-

further deliberate on the inconsistent verdict.  (<u>See</u> RE15 at 173-6 to 174-11.)  The judge

gave the following supplemental instructions:

> THE COURT: Members of the jury, listening to your verdict, I'm a little confused in that under count one, you have found the defendant guilty of robbery. And you have answered specifically question number two, did the defendant in the course of committing the robbery purposely inflict or attempt to inflict serious bodily injury, and you've answered yes.
>
> Yet on count two, the aggravated assault where you were asked whether or not the defendant attempted to cause serious bodily injury to Thomas Johnson and/or did purposely or knowingly cause serious bodily injury to Thomas Johnson and/or under circumstances manifesting extreme indifference to the value of human life did recklessly cause serious bodily injury, you've answered not guilty.
>
> They seem inconsistent with each other in that under count two you've answered did the defendant, in the course of committing a crime, attempt to cause – attempt to inflict serious bodily injury, and yet you found him not guilty of attempting to cause serious bodily injury under count two.
>
> It appears to be a conflict.
>
> Members of the jury, I don't want to go into your reasons at this point, however, I'd like to have you go back and reconsider these verdicts before I take them as final verdicts because it does appear to be inconsistent on its face.
>
> Counsel, is that agreeable?
>
> MR.NIEVES (Defendant): Yes, Your Honor.
>
> MS. RUGGERO (State): Yes.
>
> THE COURT: Members of the jury, I'm going to ask you to go back and please I will not accept any of these verdicts at this point. I want you to go back and deliberate and let me know whether or not you feel any of these verdicts as delivered to the Court are inconsistent or you feel may be changed so that they are consistent. Again, it's your decision that applies.
>
> But if you can see what I'm getting at, it appears to be inconsistent in those questions.
>
> And, members of the jury, if you come back, let me know that you wish that to be your final verdict, I will take it. However, I feel in reviewing this, it appears that they are inconsistent.
>
> I will return your verdict sheet to you and ask that you please go back to continue your deliberations and let me know when you have reached a verdict.

-3-

(Jury Out)
THE COURT: Counsel, anything further at this time?
MR. NIEVES (Defendant): Not at this time, Your Honor.
MS. RUGGERO (State): Not at this time.

(RE15 at 174-13 to 177-1.)  Neither counsel objected to this instruction.  The judge

acknowledged that his supplemental instruction gave Miller the potential of being found

guilty on a lesser charge and stated:

> THE COURT: I felt that while we had the jury here, there was an
> opportunity for the jury to let us know if, in fact, there was a mistake
> inasmuch as even if the defendant has been convicted at this point of the
> more serious offense, it would merge and, therefore, the defendant was in
> no further exposure at that point.
>    He did have the opportunity, if the jury felt the other way, to find
> him guilty of only a second degree robbery and, therefore, there was no
> down side to the defendant.
>    The State was running the risk that, in fact, they might not have a
> first degree conviction, it would only be a second degree.

(Id. at 185-21 to 186-8.)  The jury deliberated and returned a verdict of first-degree

robbery and second-degree aggravated assault.  (See id. at 177-18 to 183-17.)  Then, the

judge merged the second-degree assault conviction into the first-degree robbery

conviction.  See infra Part II.B.; (See also RE15.)

The trial court rejected the state's application to impose an extended term for

which Miller was eligible, and sentenced Miller, on the robbery, to a maximum term of

twenty years subject to ten years of parole ineligibility.  (See RE16.)  Thus, the second-

degree aggravated assault charge did not affect Miller's sentence because it was merged

into the first-degree robbery charge.

Miller appealed the conviction to the Superior Court of New Jersey, Appellate Division ("Appellate Division").  (See RE4.)  The conviction and sentence were affirmed on September 17, 2001.  (Id.)  Miller claimed that: (1) the trial court's directive that the jury re-deliberate their verdict on aggravated assault was plain error; (2) that the photo array was highly suggestive and should not have been allowed into evidence; (3) that there was not effective assistance of counsel; (4) that the verdict was against the weight of the evidence; and, (5) that the sentence was manifestly excessive.  (See RE3.)

On November 14, 2001, Miller filed a Petition for Certification with the New Jersey Supreme Court, which contended that the Appellate Division erred when it rejected the same five claims raised on appeal.  (Id. at 2.)  On February 19, 2002, the Supreme Court denied Miller's Petition for Certification.  (See RE1.)

On October 18, 2002, Miller filed the instant Petition, which asserts four (4) grounds for relief.  First, Miller claims that Judge Natal's directive that the jury re-deliberate its verdict on aggravated assault was plain error because he unfairly benefitted the State when he alerted counsel of the verdict, controlled the conference, and conducted the conference in view of the jury.  (See Pet. ¶ 12.A.)  Second, Miller argues that the jury verdict was against the weight of the evidence.  (See Pet. ¶ 12.B.)  Third, Miller asserts that he received ineffective assistance of counsel.  (See Pet. ¶ 12.C.)  Lastly, Miller claims that the photo array exhibited at trial was an improper and suggestive identification.  (See Pet. ¶ 12.D.)  On March 20, 2003, the State filed its Answer.

## II.  DISCUSSION

**A.      Standard of Review for a § 2254 Petition in district court**

The standard of review of a § 2254 Petition in district court is mandated by the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); Marshall v. Hendricks, 307 F.3d 36, 50 (3d Cir. 2002).  A federal

habeas court must presume that a state court's findings of fact are correct.  See 28 U.S.C.

§ 2254(e)(1).  The petitioner bears the burden of rebutting the presumption of correctness

by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Campbell v. Vaughn, 209

F.3d 280, 285 (3d Cir. 2000).

Section 2254(d)(1) defines two categories of cases where state prisoners can obtain

habeas corpus relief for claims adjudicated on the merits in state court: (i) where the

relevant state court decision was *contrary to* the clearly established federal law as

determined by the Supreme Court; or, (ii) where it involved an *unreasonable application*

of such law.  See 28 U.S.C. § 2254(d)(1) (emphasis added).

Under the first category, a state court decision is contrary to Supreme Court

precedent under § 2254(d)(1) where the state court reached a "conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Marshall, 307 F.3d at 51 (quoting Williams v. Taylor, 529 U.S. 362, 413 (2000)).  Under the second category, a state court decision is an unreasonable application under § 2254(d)(1) if the court

> identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts of the particular case or if the state court either unreasonably extends a legal principle from the Supreme Court's precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

Gattis v. Snyder, 278 F.3d 222, 228 (3d Cir. 2002) (citing Williams, 529 U.S. at 407).

The unreasonable application test is an objective one - a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly.  Wiggins v. Smith, 539 U.S. 510, 520-21 (2003); Gattis, 278 F.3d at 228.  AEDPA's deferential standards of review do not apply "unless it is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States."  Everett v. Beard, 290 F.3d 500, 508 (3d Cir. 2002).

Finally, the AEDPA amended the federal habeas statute to limit the availability of new evidentiary hearings in the district court.  28 U.S.C. § 2254(e)(2); Campbell, 209 F.3d at 286-87 (holding that if the state court made factual findings to which federal

-7-

courts must defer, then a new evidentiary hearing would be forbidden under the precepts of §2254 (e)(2)).  Given the deference to the state court, and the completeness of the record as to the issues in this Petition, an evidentiary hearing is not necessary.

**B.    Petitioner's claim that the inconsistent verdicts were improperly resubmitted to the jury is without merit.**

Miller asserts that he did not receive a fair trial because the jury was prejudiced by Judge Natal's request for the jury to further deliberate on the inconsistent verdicts of first-degree robbery (requiring serious bodily harm) and third-degree assault (requiring significant bodily harm).  Miller has exhausted his state remedies in the Appellate Division and New Jersey Supreme Court as to this claim.  See 28 U.S.C. § 2254(b)(1)(A); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999) (holding that a state prisoner must exhaust their state remedies before a federal court may grant habeas relief).  Miller claims that Judge Natal unfairly benefitted the prosecution because he alerted counsel of the inconsistent verdict, controlled the verdict conference, and conducted the conference in view of the jury.  (See Pet. ¶ 12.A.)  Presumably, Miller is asserting that he had an unfair trial in violation of the Sixth Amendment and Due Process Clause of the United States Constitution.

Judge Natal's actions must be considered under the plain error rule.  See Fed. R. Crim. P. 52(b); Johnson v. United States, 520 U.S. 461 (1997).  Before a court can correct an error not raised at trial, there must be (1) "error," (2) that is "plain," and (3) that "affect[s] substantial rights."  Johnson, 520 U.S. at 466-67 (quoting United States v.

Olano, 507 U.S. 725, 732 (1993)).  If all three conditions are met, a court may then

exercise its discretion to notice a forfeited error, but only if the error " 'seriously affect[s]

the fairness, integrity, or public reputation of judicial proceedings.' "  Johnson, 520 U.S.

at 466-67 (quoting United States v. Atkinson, 297 U.S. 157, 160 (1936)).

Inconsistent verdicts may be valid; however, a trial judge may remand the jury

with instructions to further deliberate if it appears that the jury needs clarification of the

law.  "Consistency in the verdict is not necessary" because it "does not show that [the jury

was] not convinced of the defendant's guilt."  Dunn v. United States, 284 U.S. 390, 393

(1932).  Questions concerning instructions are normally matters of state law and are not

cognizable in federal habeas corpus review.  Grecco v. O'Lone, 661 F. Supp. 408, 412

(D.N.J. 1987) (citing Henderson v. Kibbe, 431 U.S. 145 (1977)).  Only where the giving

of an instruction is so prejudicial as to amount to a violation of due process and

fundamental fairness will a habeas corpus claim lie.  See 28 U.S.C. § 2254(a); Grecco,

661 F. Supp. at 412.  When jurors become confused about how the law, as explained to

them by the judge, is to be applied, the judge may give additional instruction to the jury to

clarify the law.  Grecco, 661 F. Supp. at 413.  The supplemental charge may neither

contradict itself nor the prior instructions given in the case.  Id. at 414.

Judge Natal's supplemental instruction was neutral, non-contradictory, and

consented to by both counsel.  First, he gave instructions to the jury about the robbery,

assault and other charges and he explained the difference between first-degree, which

involved an attempt to inflict serious bodily harm, and second-degree robbery, which did not involve an attempt to inflict serious bodily harm.  (See RE15 at 128-7 to 128-20.)  An attempt to inflict serious bodily harm elevated the robbery from a second-degree to a first-degree offense.  (Id.)  Next, he charged the jury "on the second count of aggravated assault."  (Id. at 134-7 to 134-9.)  Then, he defined the requirements for second-degree aggravated assault.  (Id. at 134-21 to 135-6.)   He stated that "serious bodily injury means bodily injury to create substantial risk of death or which causes serious permanent disfigurement or a protracted loss or impairment of any function of the body member or organ."  (Id. at 139-20 to 139-24.)  Also, he clarified the lesser charge of third-degree aggravated assault.  (Id. at 142-1 to 142-9.)  He explained that "[s]ignificant bodily injury means bodily injury that creates a temporary loss of the function of any body member or organ or temporary loss of any one of the five senses."  (Id. at 142-16 to 142-19.)  If the jury found Miller guilty of second-degree aggravated assault, then the jury would not need to decide the third-degree aggravated assault charge.  (Id. at 146-9 to 147-16.)

Judge Natal asked and did not receive any objections to the jury instructions.  (Id. at 163-6 to 163-9.)  The jury asked a question about the difference between serious and significant bodily injury.  (Id. at 166-22 to 167-14.)  After consulting counsel, Judge Natal simply read the definitions from the criminal statute, N.J.S.A. 2C:11-1.  (Id.)  The jury indicated that the judge had answered its questions, and again no objections were made by counsel.  (Id. at 168-10 to 169-7.)

The first-degree robbery and third-degree aggravated assault verdict appeared inconsistent.  (See RE15 at 173-7 to 174-11.)  The judge conferred with counsel, explained the potential conflict, and instructed the jury to continue to deliberate on the inconsistent verdict.  (Id. at 173-7 to 177-1.)  Both counsel found his instruction agreeable and appropriate under the circumstances.  (Id.)  Indeed, the judge's neutral and non-contradictory instruction gave Miller the potential of being found guilty on a lesser charge:

> THE COURT: I felt that while we had the jury here, there was an opportunity for the jury to let us know if, in fact, there was a mistake inasmuch as even if the defendant has been convicted at this point of the more serious offense, it would merge and, therefore, the defendant was in no further exposure at that point.
> He did have the opportunity, if the jury felt the other way, to find him guilty of only a second degree robbery and, therefore, there was no down side to the defendant.
> The State was running the risk that, in fact, they might not have a first degree conviction, it would only be a second degree.

(Id. at 185-21 to 186-8.)  The supplemental instruction did not influence the verdict.

Judge Natal did not prejudice Miller when he requested the jury to further deliberate on the inconsistent verdict.  Like Grecco, his instructions to further deliberate merely clarified the issues in the case and the law to be applied.  The record indicates that his instructions were neutral, and they allowed Miller the possibility of being found guilty of a lesser charge.  At no time did counsel object to these instructions despite an opportunity to do so.  Therefore, it is apparent that Judge Natal's actions did not constitute plain error, or prejudice Miller, when he ordered the jury to further deliberate

on the inconsistent verdict.

In addition, Judge Natal's supplemental instruction did not constitute plain error. The Appellate Division's affirmance of the trial court's decision is therefore neither contrary to, nor an unreasonable application of the Supreme Court or Third Circuit case law.  Therefore, Miller's application for habeas relief on these claims will be denied.

**C.    The jury verdict was not against the weight of the evidence.**

Miller claims that he was deprived of his right to due process because the trial evidence was allegedly insufficient to support a verdict of guilty on first-degree robbery and second-degree aggravated assault.  (See Pet. ¶ 12.B.)  As a threshold matter, district court review is appropriate only if Miller exhausted his state remedies as to this claim. See 28 U.S.C. § 2254(b)(1)(A); Boerckel, 526 U.S. at 842.  Under New Jersey Court rules, the issue of whether a jury verdict was against the weight of the evidence shall not be cognizable on appeal unless a motion for a new trial on that ground was made in the trial court.  N.J. Ct. R. 2:10-1.  Miller did not move for a new trial on grounds that the verdict was against the weight of the evidence.  The Appellate Division noted that Miller was foreclosed from raising this claim; but, nonetheless, it addressed the merits of his argument on appeal.  The Court will also consider Miller's arguments, and hold that habeas review is foreclosed on this claim under 28 U.S.C. § 2254(b)(1)(A) since Miller failed to raise this issue on direct appeal.

Presently, Miller specifically asserts that the medical evidence was inaccurate and

that no physical evidence "link[ed] defendant to the scene of the crime."  (See Pet. ¶

12.B.)  The Appellate Division and the New Jersey Supreme Court held that this claim

was without merit because there was sufficient evidence from the victim, Thomas

Johnson ("Johnson"), Officer Weigand ("Weigand"), and Johnson's hospital records to

support a conviction on the crimes charged.  (See RE4 at 10.)

The analysis must begin by reiterating the deference that a district court must give

a state court under a writ of habeas corpus.  In reviewing the sufficiency of the evidence

underlying a criminal conviction, the question is whether after viewing the evidence in

the light most favorable to the prosecution, any reasonable trier of fact could have found

the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443

U.S. 307, 319 (1979); Paullett v. Howard, 634 F.2d 117, 118 (3d Cir. 1980).  Pursuant to

the AEDPA and Williams, discussed in Part II.A., *supra*, the reviewing court must

determine whether the application of Jackson was objectively unreasonable.  See

Williams, 529 U.S. at 409-10.

Here, Johnson's testimony provided the requisite evidence to support Miller's

conviction.  First, Johnson described how Miller attacked him during the early evening of

December 20, 1996.  (See RE14 at 5-14 to 34-21.)  Johnson stated that he had shopped

prior to the incident and previously lived near the crime scene.  (Id. at 5-18 to 6-15.)

Miller and another individual approached him and attempted to sell him drugs.  (Id. at 7-4

to 7-5.)  Then, Johnson indicated that he recognized Miller from the neighborhood.  (See

-13-

RE14 at 7-19 to 7-24.)  When Johnson declined the drugs, Miller punched him in the jaw.

(Id. at 8-8 to 8-15.)  Next, Miller said, "You don't give up the money, we're going to kill

you."  (Id. at 8-25 to 9-1.)  Johnson attempted to run away, but five more individuals

joined the original two attackers.  (Id. at 9-23 to 10-11.)  Further, Johnson stated to his

attackers, " 'What are you doing?  You guys know me.  You've seen me around this

neighborhood.  I used to live here.  Why would you do this to me, knowing that I know

your faces, I know who you are?  Why me?' "  (Id. at 10-24 to 11-3.)  All seven men

proceeded to surround, pummel, stomp, punch, and hit Johnson with asphalt as he was

lying on the ground.  (Id. at 11-10 to 19-8.)  Johnson testified that Miller returned with

another individual as Johnson tried to escape.  (Id. at 19-8 to 19-14.)  Then, Miller stole

Johnson's leather coat, wallet, and shopping bag.  (Id. at 17-21 to 19-6.)  Next, Miller

held Johnson as the other man kicked Johnson's left eye, fractured the orbit, and

temporarily blinded him.  (Id. at 19-6 to 19-18.)  Then, Miller left and Johnson eventually

made it to the hospital.  (Id. at 20-19 to 23-24.)  Johnson completed his testimony by

positively identifying Miller in court.  (Id. at 14-17 to 14-25.)

　　　　Weigand's testimony proffered more evidence to indicate that Miller attacked

Johnson.  A few weeks after the incident, Weigand showed Johnson a photo array of six

African-American males, who matched Johnson's description of his attacker.  (Id. at 87-

11 to 89-14.)  Johnson immediately identified Miller as his victimizer.   (Id. at 89-15 to

90-9.)  Then, Weigand proceeded to show Johnson a mug book of six hundred photos.

(See RE14 at 90-14 to 90-21.)  Johnson could not identify any other attacker.  (Id.)  At trial, Johnson positively identified Miller in the courtroom, and recounted his earlier identification of Miller.  (See RE14.)  The Appellate Division and the New Jersey Supreme Court did not find the photo array to be impermissibly suggestive.  (See RE4 at 9.)  The Appellate Division found that the photo array was unlikely to have "tainted [Johnson's] in-court identification of Miller."  (Id.)  Likely, this conclusion was reached because Johnson previously knew Miller before he was attacked by him.  (See RE14 at 7-19 to 11-3.)

Further, Johnson's hospital records corroborated the testimony that he suffered a broken rib, bruised lungs, and a cracked orbital.  (Id. at 23-18 to 27-4.)  The quantum of evidence at trial demonstrates that any reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  See Jackson, 443 U.S. at 319.

Therefore, the record supports the decision of the Appellate Division and the New Jersey Supreme Court, which held that the State's evidence was sufficient to support a guilty verdict.  Miller's failure to move for a new trial on this ground in trial court could have, and should have barred the claim in the Appellate Division.  See N.J. Ct. R. 2:10-1; (See also RE4 at 10.)  The Appellate Division's decision - holding that the jury's verdict was not against the weight of the evidence - was neither contrary to, nor an unreasonable application of Supreme Court or Third Circuit case law.  Therefore, Miller's habeas relief for this claim will be denied.

**D.      Petitioner's claim that he received ineffective assistance of counsel is without merit.**

Miller asserts that he received ineffective assistance of counsel in violation of his rights under the Sixth Amendment.  District court review is appropriate here because Miller has exhausted his state remedies as to this claim.  See 28 U.S.C. § 2254(b)(1)(A); Boerckel, 526 U.S. at 842.  Miller urges that he was deprived of effective representation because his attorney complied with Judge Natal's direction to the jury that ordered a re-deliberation on the inconsistent verdict.  (See Pet. ¶ 12.C.)

Criminal defendants are entitled to a Sixth Amendment right of effective representation.  Deficient representation under the United States Constitution has traditionally been evaluated under the two-part test established in Strickland v. Washington, 466 U.S. 668, 687 (1984).  In Strickland, the Court held the following two-part test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687.  Thus, Miller must show both plain incompetence by his counsel, and that he was prejudiced by this plain incompetence.  Id.  A claim of ineffective assistance of counsel is meritless if there was neither a showing of deficient performance nor a showing that any failing by counsel prejudiced petitioner's right to a

fair trial.  Id.

_____First, in order to establish plain incompetence, it must be determined whether the assistance of counsel met the objective standard of reasonableness for effectiveness.  Id. at 688.  A court must be highly deferential to decisions of reasonableness established in the state courts.  Id. at 689.  Traditionally, this deference includes avoiding the questioning of the defense counsel's trial tactics.  Id. at 688-89.  Thus, the Court has held that independence of counsel permits a wide latitude of tactical decisions.  Id.

Second, Miller must show that he did not receive a fair trial because he was prejudiced by his counsel's plain incompetence.  Id. at 687.  Under Strickland, petitioner must show a reasonable probability of unprofessional errors which affected the initial conviction.  Id. at 694.  For habeas relief, these errors must undermine the confidence in the outcome.  Id. at 690.

Here, Miller has not satisfied the first prong under Strickland.  The Appellate Division found that Miller's attorney met the objective standard of reasonableness for effectiveness because he utilized reasonable trial tactics.  (See RE4 at 6.)  Miller's attorney acquiesced to Judge Natal's instructions for the jury to deliberate further on the inconsistent verdicts because there was no reason to object to this neutral instruction. Most importantly, counsel's acquiescence to Judge Natal's instructions gave Miller the potential of benefitting from a lesser charge, such as second-degree robbery or accomplice liability, as noted in Part II.B., *supra*.  (See RE15.)  Miller's argument is

-17-

further undermined because counsel's tactics resulted in the acquittal of two other counts, terroristic threats and possession of a weapon for an unlawful purpose.  (See RE4.)  The record indicates that counsel was effective in light of the overwhelming evidence against Miller at trial.  In concurrence with the Appellate Division, it is determined here that Miller does not meet the first element of the Strickland test.

In addition, Miller also does not meet the second part of the Strickland test, which requires petitioner to be prejudiced by deficient counsel.  Miller does not explain how his counsel's failings affected the jury's verdict.  The Appellate Division and the New Jersey Supreme Court correctly found that Miller's attorney acted reasonably and did not mistakenly exercise his discretion in concurring with Judge Natal's clear and neutral jury instruction, as noted in Part II.B., *supra*.  (Id. at 8.)  Thus, Miller was not prejudiced by his defense counsel's performance.  Consequently, Miller fails to meet the second part of the Strickland test.

For these reasons, Miller's claim of ineffective assistance of counsel is without merit, and habeas relief for this claim will be denied.

**E.   Petitioner's claim that the photo array was an improper identification is without merit.**

Miller claims that the photo array was an improper and suggestive identification. District court review is appropriate here because Miller has exhausted his state remedies as to this claim.  See 28 U.S.C. § 2254(b)(1)(A); Boerckel, 526 U.S. at 842.  Miller asserts that the photo array was unduly suggestive because it portrayed him as the darkest-

skinned person in an array of six African-American males.  (Pet. ¶ 12.D.)  Miller infers

that this suggestive photo array prejudiced Johnson into identifying him as his assailant.

However, as discussed in Part II.C., *supra*, Johnson previously knew Miller, and testified

at trial that he notified Miller of that fact during the attack.  (See RE14 at 7-19 to 11-3.)

Furthermore, Johnson correctly identified Miller as his assailant in-court without the aid

of the photo array.  (Id. at 14-17 to 14-25.)

The United States Supreme Court has held that pretrial photo identification will be

set aside "only if the identification procedure was so impermissibly suggestive as to give

rise to a very substantial likelihood of irreparable misidentification."  Simmons v. United

States, 390 U.S. 377, 384 (1968).  In assessing the reliability of the identification, the Court

weighs the likelihood of corruption from the suggestive identification versus the victim's

ability to make an accurate identification.  Manson v. Brathwaite, 432 U.S. 98, 129

(1977).

Here, Weigand's photo array was not so impermissibly suggestive.  Weigand

responded to Johnson's robbery, took one photograph of him, sent him to the hospital,

investigated the crime scene, and eventually visited Johnson in the hospital to obtain a

description of the assailant.  (See RE14 at 78-13 to 86-21.)  A few weeks later, he showed

Johnson the photo array based on his description, and testified in court that:

> I first, before I showed it to him, I told him that I was going to show him a
> photo array containing six photographs. The person or persons who attacked
> him may or may not be in that array. I asked him to take his time and make
> sure, you know, look at each photo carefully and tell me if he was positively
> sure if one or more of those persons in that array were those that attacked

him that night.

(See RE14 at 88-25 to 89-7.)  Johnson immediately identified Miller from the photo array,

which depicted six African-American males.  (Id. at 89-15 to 89-18.)  Weigand then

showed Johnson approximately six hundred more photos, but Johnson did not positively

identify another assailant.  (Id. at 90-16 to 90-21.)

Miller does not meet the high standard necessary to prove that the photo array was

improper.  The Appellate Division and the New Jersey Supreme Court held that the photo

array was not impermissibly suggestive because the photo array was unlikely to have

tainted Johnson's in-court identification of Miller.  (See RE4.)  Presumably, this decision

rests on the fact that the assailant was already known to him.  Johnson testified that he

recognized Miller when he first saw him on the evening of the attack and actually

reminded Miller during the assault that they were both from the same neighborhood.  (See

RE14 at 7-19 to 11-3.)  Thus, the victim had ample opportunity to observe Miller during

the incident.  Also, Johnson identified Miller in-court without the aid of the photo array.

(Id. at 14-17 to 14-25.)

Therefore, the record supports the decision of the Appellate Division and the New

Jersey Supreme Court, which held that the State's evidence was sufficient to support a

guilty verdict.  The Appellate Division's decision - holding that the jury's verdict was not

against the weight of the evidence - was neither contrary to, nor an unreasonable

application of Supreme Court or Third Circuit case law.  Therefore, Miller's habeas relief

for this claim will be denied.

**F.  Petitioner's new grounds for relief are without merit and failed to exhaust state remedies.**

Miller asserts new claims based on (1) double jeopardy, (2) the prosecutor withholding favorable medical evidence, and (3) improper jury instructions.  (See Pet. ¶ 13.)  The United States Supreme Court has held that there is not a double jeopardy violation when a defendant has not been subjected to greater punishment than intended by the legislature.  Jones v. Thomas, 491 U.S. 376, 379 (1989).  On habeas review, the Court has held that there must be a reasonable probability that the disclosure of withheld evidence will produce a different result.  Kyles v. Whitley, 514 U.S. 419, 421-22 (citing Brady v. Maryland, 373 U.S. 83 (1963)).  As to improper jury instructions, the Court has held that jury instruction will be improper if the instruction so affected the entire trial that the resulting conviction violated the constitutional right of due process.  Estelle, 502 U.S. at 72 (citing Cupp v. Naughten, 414 U.S. 141, 147 (1973)).

Here, Miller's claims of double jeopardy and withholding of favorable medical evidence by the prosecutor are without merit.  Miller has failed to exhaust state remedies for the "new grounds" for relief.  Miller has not proffered reasons for not having previously presented these claims in either trial court or the Appellate Division, despite his opportunity to do so.  Pursuant to 28 U.S.C. § 2254(b)(1)(A) review of these claims is foreclosed.

Even assuming that habeas review is allowable, these claims are meritless.  Like Jones, double jeopardy is not implicated because both the trial court and the Appellate

Division properly concluded that the merger of the count two assault charge into the count one robbery charge was valid and the sentencing was not excessive.  (See RE4.) There is not a reasonable probability that this prosecutor improperly withheld evidence favorable to Miller in the trial court because Miller does not explain how the prosecutor withheld favorable medical evidence, or the nature of the evidence withheld.  At trial, the State exhibited hospital records that described Johnson's injuries, including broken rib, bruised lungs, and a cracked orbital.  (See RE14 at 23-18 to 27-4.)  Further, as discussed in Part II.C., *supra*, both the trial court and the Appellate Division held that the testimony of Johnson, Weigand, and Johnson's hospital records supplied sufficient evidence for conviction. (See RE4 at 10.)

The improper jury instruction has been addressed in Parts II.B. and II.D., *supra*, and reviewed by the Appellate Division and the New Jersey Supreme Court.  (See RE4 at 8.)  It is not a new claim that requires further discussion.  Therefore, Miller's relief as to this claim will be denied.  Accordingly, Miller does not raise any new grounds for relief in his Petition that are cognizable under § 2254**.**

## III. CONCLUSION

For the reasons stated herein, Petitioner's § 2254 habeas application will be denied.  The accompanying Order will be entered.  Because Miller has not made a substantial showing of the denial of a constitutional right, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c).  <u>See</u> Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.


Dated: <u>August 3, 2005</u>                    /S/ Joseph H. Rodriguez
                                        JOSEPH H. RODRIGUEZ
                                        United States District Judge